UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11180-RGS

SHAWN HARRINGTON,
on behalf of himself and all others similarly situated

v.

WELLS FARGO BANK, N.A.

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION TO REMAND AND
DEFENDANT'S MOTION TO DISMISS

August 14, 2019

STEARNS, D.J.

Shawn Harrington brought this putative class action in Middlesex Superior Court against Wells Fargo Bank, N.A.[1] Harrington alleges that Wells Fargo violated Mass. Gen. Laws ch. 93A, § 2, and 940 C.M.R. § 7.04, by repeatedly placing more than two debt collection calls within a seven-day period. Wells Fargo timely removed the case to the federal district court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d) and

---

[1] The state court complaint improperly named "Wells Fargo Auto Finance, Inc." as the defendant, see Notice of Removal (Dkt # 1) at 1 n.1, a misnomer that Harrington corrected in his Amended Complaint.

1453.² Harrington moves to remand the case for lack of subject matter jurisdiction, while Wells Fargo moves to dismiss the Amended Complaint for failure to state a claim. For the reasons to be explained, both the motion to remand and the motion to dismiss will be denied.

## BACKGROUND

The facts, as alleged in the Amended Complaint, are as follows.³ In 2015, Harrington obtained an automobile financing loan from Wells Fargo. Sometime thereafter, Harrington stopped making payments on the loan. Wells Fargo then proceeded to call Harrington more than twice a week on his cellular telephone to collect on the debt. Specifically, "throughout the second half of 2018 and the beginning of 2019, Wells Fargo placed near-daily calls to [his] cellular telephone and consistently placed more than four calls to [his] cellular telephone within a seven-day period." Am. Compl. (Dkt # 8) ¶ 14.

Harrington seeks to represent a class of

> [a]ll consumers residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, received in excess of two telephone calls regarding a debt from Wells

---

² Harrington filed the state court complaint on April 8, 2019, and served Wells Fargo on April 24, 2019. Wells Fargo then removed the case to this court on May 24, 2019. Notice of Removal ¶¶ 1, 24.

³ The Amended Complaint includes changes to the original state court complaint that are, for the purposes of the motion to remand, immaterial.

> Fargo within a seven-day period to their residence, cellular telephone, or other provided telephone number.

*Id.* ¶ 22. He alleges that "thousands" of Massachusetts consumers are members of the proposed class. *Id.* ¶ 25. In the civil action cover sheet to the original state court complaint, Harrington lists damages as greater than $25,001. Cover Sheet (Dkt # 1-3).

## DISCUSSION

### *Motion to Remand*

CAFA provides that federal courts have jurisdiction over class actions based on state law when: (1) there is "minimal" diversity (meaning that at least one plaintiff and one defendant are from different states); (2) the amount in controversy exceeds $5 million; and (3) the action involves at least 100 class members. 28 U.S.C. §§ 1332(d)(2) and (5)(B). Here, Harrington only disputes that the threshold amount in controversy has been met.[4] Wells Fargo, as the removing party, bears the burden of demonstrating a "reasonable probability" that the aggregate claims of the plaintiff class were greater than $5 million at the time of removal. *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 43 (1st Cir. 2009). The court ultimately, however, looks

---

[4] The other two elements are satisfied. Harrington is a Massachusetts resident, while Wells Fargo is a citizen of South Dakota. Am. Compl. ¶¶ 5-6. And the putative class is purportedly composed of "thousands" of Massachusetts consumers. *Id.* ¶ 25.

to "what *both* parties have shown" and considers "which party has better access to the relevant information." *Id.* at 51 (emphasis in original).

Chapter 93A and the Massachusetts Debt Collection Regulations specify damages (where awarded) as follows:

> if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.

Mass. Gen. Laws ch. 93A, § 9(3).

Harrington contends that the state court civil action cover sheet is the end of the court's inquiry because it lists damages at "[g]reater than $25,001.00 on behalf of Plaintiff *and class*." Cover Sheet (Dkt # 1-3) (emphasis added). In other words, the $25,001 alleged in damages, according to Harrington, is for the entire class, not just himself. However, this number, $25,001, was clearly chosen to plead into the jurisdiction of the Superior Court. *See* Mass. Gen. Laws ch. 212, § 3 (stating that the Superior Court has original jurisdiction in civil actions over $25,000).[5]

---

[5] Also, as Wells Fargo points out, $25,001 cannot possibly be the total damages for the class, given the "thousands" of purported members and a minimum recovery under Chapter 93A of $25. Wells Fargo, for its part, argues that the $5 million threshold is, in turn, satisfied by multiplying

4

Finding the cover sheet non-dispositive, the court turns to the declaration of Regina Waller, an Account Resolution Manager for Wells Fargo. She attests that "there are 21,208 loans that were 60 days past due at some point in time between May 1, 2015 and May 15, 2019 [(during the class period)] and would have received collection calls from Wells Fargo." Waller Decl. (Dkt #25-2) ¶ 4.[6] Because Harrington purports to represent a class, his alleged damages can be multiplied by the putative class size of 21,208. *See*

---

$25,001 by 2,000 (the fewest members possible given Harrington's allegation that there are "thousands" of similarly situated Massachusetts consumers). But because the court ultimately concludes that Wells Fargo has met its burden under CAFA for other reasons, the court takes no position on whether this is a reasonable damages methodology.

[6] Harrington contends that this proposed class is overly broad because Wells Fargo has not identified whether the 21,208 debtors were indeed called. However, Waller specifically attests that "[e]xcept in limited circumstances . . . , it is Wells Fargo's regular business practice to make collection calls to customers who are 60 days past due on their [a]uto [l]oans." Waller Decl. ¶ 5. Waller further attests that although "Wells Fargo maintains databases regarding the calls it makes to its [a]uto [l]oan customers," it cannot "accurately determine how many times it placed collection calls to a particular customer within each seven-day period *without conducting a manual account-by-account review of each customer's account and associated call notes*." *Id.* ¶¶ 6, 9 (emphasis added). The court is therefore satisfied, at this stage of the litigation, with the proposed 21,208 class members. *See Amoche*, 556 F.3d at 50 (noting that determining the amount in controversy "should not devolve into a mini-trial" or "result in extensive and time consuming litigation"); *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001) ("[D]etermining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry.").

5

*Alper v. Select Portfolio Servicing, Inc.*, 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) (relying on a similar declaration and applying comparable calculations in an analogous case involving allegedly excessive debt collection calls).[7] Harrington has not identified whether he seeks a per-week award or a per-call award, but either way, there is a reasonable probability that the aggregate averred claims exceed $5 million.

Harrington alleges that he received at least two calls per week over the two-call limit "throughout the second half of 2018 and the beginning of 2019." Am. Compl. ¶ 14. Wells Fargo estimates, and the court accepts, that that time period amounts to 39 weeks.[8] Accordingly, a per-week calculation of Harrington's damages yields $975 ($25 times 39 weeks), while a per-call

---

[7] Harrington relies on *Amoche* for the proposition that "simple multiplication" of his alleged damages by the proposed class size is invalid. 556 F.3d at 52. However, his reliance is misplaced. In *Amoche*, the First Circuit held that the defendant's calculation of damages was unreliable because it extrapolated damages for the proposed class, composed of members of different states, by relying solely on the damages alleged for New Hampshire class members. *Id.* at 52-53. Here, the court can extrapolate damages for the class because Harrington's allegations are purportedly representative of the class's claims. *See Alper*, 2019 WL 3281129, at *3 n.2 ("Here, the Court must extrapolate because the allegations are class-based and Plaintiffs have alleged that their claims are typical of the class.").

[8] Harrington objects that 39 weeks is not specifically alleged, but fails to articulate why it is an unreasonable estimate. *See Amoche*, 556 F.3d at 51 ("Merely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient.").

calculation yields $1,950 ($25 times 39 weeks times two excessive calls per week). Multiplying the class size of 21,208 by the per-week award and the per-call award yields $20,677,800 and $41,355,600, respectively. *See Alper*, 2019 WL 3281129, at *3 (performing similar calculations). Both amounts far exceed CAFA's $5 million threshold, without even taking into account Harrington's demand for treble damages, *see Law Office of Joseph J. Cariglia, P.C. v. Jelly*, 146 F. Supp. 3d 251, 254 (D. Mass. 2015) ("The amount in controversy includes statutory multipliers of damages, such as the treble damages provision in Mass. Gen. Laws ch. 93A."), or attorney's fees, *see Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (finding that attorney's fees in Chapter 93A claims must be considered in determining the amount in controversy because the statute "allows plaintiffs to collect attorney's fees as part of their damages"), citing Mass. Gen. Laws ch. 93A, § 9(4). In short, Wells Fargo has satisfied its burden of demonstrating a reasonable probability that the amount in controversy exceeds $5 million.

***Motion to Dismiss***

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its

factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Wells Fargo contends that Harrington fails to sufficiently allege that it engaged in unfair or deceptive conduct. First, according to Wells Fargo, Harrington's allegations lack sufficient specificity regarding, among other things, the underlying debt and Wells Fargo's debt collection practices. Second, Harrington's numerous citations to 940 C.M.R. § 7.03 are merely formulaic recitations of Massachusetts regulations.[9] *See Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). And third, the Amended Complaint is inconsistent about how

---

[9] Specifically, the Amended Complaint states that Harrington "is a 'debtor' as defined by 940 CMR § 7.03;" that Wells Fargo "is a 'creditor' as defined by 940 CMR § 7.03;" that Harrington incurred "a 'debt' under 940 CMR § 7.03;" and that Wells Fargo "initiated and engaged in 'communications' as defined in 940 CMR § 7.03." Am. Compl. ¶¶ 5-6, 8-9.

8

many calls Harrington received and when he received them. The court disagrees.

To state a claim under 940 C.M.R. § 7.04(1)(f), Harrington must allege that (1) he is a debtor, (2) Wells Fargo is a creditor, and (3) Wells Fargo "telephoned [him] more than twice in a seven-day period in an effort to collect a debt." *Armata v. Target Corp.*, 480 Mass. 14, 18 (2018); *see also Alper*, 2019 WL 3281129, at *4. Harrington does just that. According to the Amended Complaint, Harrington "incurred a financial obligation . . . to Wells Fargo . . . aris[ing] from an automobile financing loan . . . [on which] Wells Fargo attempted to collect" by "plac[ing] more than two collection calls" per week to his cellular telephone. Am. Compl. ¶¶ 4, 7-9.[10]

Wells Fargo also contends that Harrington fails to plead a legally cognizable injury under Chapter 93A that is separate and distinct from the violation of 940 C.M.R. § 7.04(1)(f). *See Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013). "Injuries under Chapter 93A may be 'non-economic,' and may include personal injury, 'measurable emotional distress,' or an 'invasion of a consumer's personal privacy' at least if it causes 'injury or harm

---

[10] Wells Fargo can also evaluate the frequency and date of the calls made to Harrington by reviewing its database. *See Alper*, 2019 WL 3281129, at *4 ("[T]he allegations are specific enough to enable SPS to evaluate Alper's claims, given that SPS is in possession of the records documenting its calls to Alper.").

9

worth more than a penny.'" *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 453 n.1 (D. Mass. 2018) (citations omitted). Here, Harrington alleges that Wells Fargo's debt collection calls caused three injuries: (1) he "suffered anger, anxiety, emotional distress, fear, frustration and embarrassment;" (2) the "calls were distracting . . . , an inconvenience . . . , and an invasion of his personal privacy;" and (3) he "wasted [his] time and energy . . . tending to [the] calls." Am. Compl. ¶¶ 16-18. These purported injuries suffice. *See Wilson v. Transworld Sys., Inc.*, 86 Mass. App. Ct. 1109 (2014) (Table) (finding a cognizable injury of emotional distress under Chapter 93A where the plaintiff felt "intimidated" by the debt collector's "aggressive" calls); *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 79 (2009), *aff'd*, 460 Mass. 500 (2011) (remanding to determine Chapter 93A damages in light of the plaintiffs "expend[iture of] considerable time, money, and effort" on litigation); *Watkins v. Glenn Assocs., Inc.*, 2016 WL 3224784, at *3 (Mass. Super. June 10, 2016) (allowing summary judgment on Chapter 93A claim where "[t]he defendant's conduct [of placing debt collection calls] was insidiously and obviously designed – twice – to

invade the privacy of an individual's dinner hour.").[11] Harrington has, therefore, plausibly pled a Chapter 93A claim.

## ORDER

For the foregoing reasons, Harrington's motion to remand and Wells Fargo's motion to dismiss are both <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[11] Wells Fargo also argues that Harrington's emotional distress injury does not satisfy the requirements of Chapter 93A. *Compare Young v. Wells Fargo Bank, N.A.*, 109 F. Supp. 3d 387, 396 (D. Mass. 2015), *aff'd*, 828 F.3d 26 (1st Cir. 2016) ("Plaintiff must prove all the elements of intentional infliction of emotional distress ('IIED') in order to prevail on a 93A claim for emotional damages."), citing *Haddad v. Gonzalez*, 410 Mass. 855, 868 (1991) *with Wilson*, 86 Mass. App. Ct. 1109 n.4 (noting that "[t]he *Haddad* plaintiff explicitly claimed intentional infliction of emotional distress" and that "[r]ecent cases . . . suggest a more permissive approach to injury for purposes of c[h]. 93A"). But because the other alleged injuries are cognizable under Chapter 93A, the court need not reach this issue.