IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN HARRINGTON, on behalf of himself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>WELLS FARGO BANK N.A., )<br><br>Defendant. ) | Civil Action No. 1:19-cv-11180-RGS |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................ii

POINT I - THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY
APPROVED.............................................................................................................9

   I.    STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION
       SETTLEMENT.................................................................................................9

   II.   THE SETTLEMENT AGREEMENT WARRANTS PRELIMINARY
       APPROVAL ...................................................................................................11

      A.  The Class has been more than adequately represented .......................12

      B.  The Settlement is the Result of Arm's Length Negotiations.............13

      C.  The Relief Provided to the Class is Outstanding ..............................14

      D.  The additional factors identified in Rule 23(e)(2)(C) all favor approval ...........15

      E.  The Proposed Settlement Treats Members of the Class Equally.......18

POINT II - THE SETTLEMENT CLASS SHOULD BE CERTIFIED...................18

   I.    LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS
       ACTION FOR SETTLEMENT PURPOSES..................................................18

      A.  Rule 23(a)'s Requirements Are Satisfied .........................................19

          1.    Numerosity .............................................................................19

          2.    Commonality ..........................................................................20

          3.    Typicality ...............................................................................20

          4.    Adequacy of Representation ...................................................21

      B.  Rule 23(b)(3)'s Requirements Are Satisfied ....................................22

          1.    Predominance .........................................................................22

          2.    Superiority...............................................................................23

POINT III - The PROPOSED NOTICE TO CLASS MEMBERS MERITS APPROVAL........24

CONCLUSION ......................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................... passim

*Andrews v. Bechtel Power Corp.,*
  780 F.2d 124 (1st Cir. 1985) ........................................................................ 12, 21

*Armata v. Target Corp.,*
  480 Mass. 14 (2018) ...................................................................................... 2, 11

*Aspinall v. Philip Morris Companies, Inc.,*
  2013 WL 7863290 (Mass. Super. Feb. 7, 2013) ............................................ 16

*Brown v. Rita's Water Ice Franchise Co. LLC,*
  2017 WL 1021025 (E.D. Pa. Mar. 16, 2017) ............................................... 12, 21

*Carlson v. Target Enter., Inc.,*
  447 F. Supp. 3d 1 (D. Mass. 2020) .............................................................. 14, 17

*Carlson v. Target Enterprises, Inc.,*
  18-cv-40139 (D. Mass) .................................................................................. 14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
  100 F.3d 1041 (1st Cir. 1996) ...................................................................... 9, 19

*Duchene v. Westlake Servs., LLC,*
  2016 WL 6916734 (W.D. Pa. July 14, 2016) ................................................ 21

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
  177 F.R.D. 54 (D. Mass. 1997) ..................................................................... 21

*East Tx. Motor Freight Sys., Inc. v. Rodriguez,*
  431 U.S. 395 (1977) ...................................................................................... 20

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ...................................................................................... 18

*García– Rubiera v. Calderon,*
  570 F.3d 443 (1st Cir. 2009) ......................................................................... 20

*Gen. Tel. Co. v. Falcon,*
  457 U.S. 147 (1982) ...................................................................................... 18

*Gordan v. Massachusetts Mut. Life Ins. Co.,*
  2016 WL 11272044 (D. Mass. Nov. 3, 2016) ............................................... 17

*Gorsey v. I.M. Simon & Co.,*
  121 F.R.D. 135 (D. Mass. 1988) ................................................................... 19

*Grace v. Perception Tech., Inc.,*
  128 F.R.D. 165 (D. Mass. 1989) ................................................................... 23

*Hill v. State St. Corp.,*
  2015 WL 127728 (D. Mass. Jan. 8, 2015) .................................................... 10

*Hopkins v. Modernize, Inc.*,
   Doc. No. 101 & 108, 17-cv-40087(TSH) (D. Mass) ................................................. 15

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) .......................................................................................20

*In re Bos. Scientific Corp. Sec. Litig.*,
   604 F. Supp. 2d 275 (D. Mass. 2009) ................................................................... 20, 21

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................................15

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) .....................................................................................24

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ............................................................................................9

*In re Lupron Mktg. and Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005) .............................................................................. 15, 18

*In re Lupron Mktg. and Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ............................................................................9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ...................................................................................... 9, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ........................................................................................20

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) .............................................................................10

*In Re: Convergent Telephone Consumer Protection Act Litigation*, ECF No. 268, 3:13-md-02478
   (D. Conn., November 10, 2016) ............................................................................ 12, 22

*Lavigne v. First Community Bancshares, Inc., et al.*,
   2018 WL 2694457 (D.N.M. June 5, 2018) ............................................................ 12, 21

*Medoff v. CVS Caremark Corp.*,
   2016 WL 632238 (D.R.I. Feb. 17, 2016) .....................................................................17

*Munday v. Navy Federal Credit Union*,
   ECF No. 60, 15-cv-01629 (C.D. Cal., July 14, 2017) ........................................... 12, 21

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
   582 F.3d 30 (1st Cir. 2009) ..........................................................................................10

*Novella v. Westchester Cnty.*,
   661 F.3d 128 (2d Cir. 2011) .........................................................................................19

*Oberther v. Midland Credit Management*,
   14-cv-30014 (D. Ma. Feb. 23, 2016) ...........................................................................12

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*,
   2016 WL 54678, (D. Or. Jan. 5, 2016) .........................................................................15

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) ........................................................................ 20

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ........................ 23, 24

*Randle v. SpecTran*,
  129 F.R.D. 386 (D. Mass. 1988) .................................................................... 23

*Reid v. Donelan*,
  297 F.R.D. 185 (D. Mass. 2014) .................................................................... 19

*Roberts v. TJX Companies, Inc.*,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) ............................................... 17

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............................................... 15

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ........................................................................................ 20

*Seekamp v. It's Huge, Inc.*,
  2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) .......................................... 12, 22

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003) ...................................................................... 18, 23

*Sullivan* v. *DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................... 16

*Swack v. Credit Suisse First Bos.*,
  230 F.R.D. 250 (D. Mass. 2005) .................................................................... 19

*Voss v. Rolland*,
  592 F.3d 242 (1st Cir. 2010) ............................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541 (2011) ............................................................ 20

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) .................................................................... 18, 22

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993) ............................................................... 16

**Statutes**

28 U.S.C. § 1332(d)(2) ........................................................................................ 3

M.G.L. c. 93A, § 2(a) .......................................................................................... 2

M.G.L. ch. 93A, § 2 ......................................................................................... 1, 4

M.G.L. ch. 93A, § 9(1) ........................................................................................ 2

M.G.L. ch. 93A, § 9(2) ........................................................................................ 3

M.G.L. ch. 93A, § 9(3) ............................................................................ 3, 14, 16

**Other Authorities**

Attorney General, Press Release, Updated Debt Regulations Provide Stronger Protections (Mar. 1, 2012), available at http://www.mass.gov/ago /news-and-updates/press-releases/2012/2012-03-01-debt-collection-regulations.html ................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................... 19

Fed. R. Civ. P. 23(a)(2) ..................................................................................................... 19

Fed. R. Civ. P. 23(a)(3) ..................................................................................................... 20

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 22, 23

Fed. R. Civ. P. 23(b)(3). ................................................................................................... 22

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................. 1

Fed. R. Civ. P. 23(e) ........................................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ....................................................................................................... 9

**Treatises**

7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011) ............................................................................................................................. 22

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11 :41, 92-93 (4th ed. 2002) ............................................................................................................................. 11

*Manual for Complex Litigation (Fourth)* §21.632 (2004) ("*Manual*") ............................. 9

MANUAL FOR COMPLEX LITIGATION THIRD (1995) §30.212 ......................................... 24

**Regulations**

940 CMR § 7.04(1)(f) ................................................................................................... 1, 2, 3

## INTRODUCTION

Plaintiff Shawn Harrington ("Plaintiff") respectfully submits this Memorandum in Support of Plaintiff's Motion to Preliminarily Approve the Parties' Class Action Settlement.

Plaintiff asks that the Court enter the Preliminary Approval Order attached as Exhibit B to the Settlement Agreement to (i) conditionally certify the Settlement Class for purposes of settlement; (ii) appoint Plaintiff as the Settlement Class Representative; (iii) appoint Lemberg Law, LLC, as Class Counsel; (iv) preliminarily approve the terms of the Settlement Agreement; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)); and (vi) schedule a Final Approval hearing in accordance with the deadlines proposed in the Settlement Agreement.[1]

This settlement resolves Plaintiff's class claims that Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo Auto ("Wells Fargo Auto") violated title 940 Code Mass. Regs. § 7.04(1)(f) (2012) (the "Regulation"), implementing Mass. Gen. Laws ch. 93A, § 2, which prohibits creditors from "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period." The Settlement Agreement provides for a non-reversionary Settlement Fund of $1,025,000.00 to pay (1) an equal share to all 20,757 Settlement Class Members; (2) Notice and Administration Costs; (3) approved Attorneys' Fees and Costs; and (4) an approved incentive award for the Plaintiff. This is an excellent settlement, merits approval, and Plaintiff respectfully requests that the Court grant this motion.

---

[1] The Settlement Agreement is attached hereto as Exhibit A. Exhibits to the agreement are:
Exhibit A – the "Long Form Notice"
Exhibit B – the "Preliminary Approval Order"
Exhibit C – the "Short Form/Postcard Notice"
Exhibit D – the "Final Approval Order"

# BACKGROUND

## The Regulation and M.G.L. ch. 93A

M.G.L. ch. 93A, the Massachusetts Consumer Protection Law, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a).

In 2012, the Attorney General of Massachusetts invoked her power to implement rules and regulations interpreting M.G.L. c. 93A, § 2(a) to provide " 'It shall constitute an unfair or deceptive act or practice for a creditor to contact a debtor . . . [by] [i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number . . . .'" *Armata v. Target Corp.*, 480 Mass. 14, 17-18 (2018) (quoting 940 C.M.R. 7.04(1)(f)) (emphasis in original).

As the Court in *Armata* set forth, the purpose of this prohibition on excess calling is to "prevent[] creditors from harassing, oppressing, or abusing debtors" (*Armata,* 480 Mass. at 15) and to "'ensure that the playing field is level for both creditors and consumers so that all parties are better protected'" (*Armata*, 480 Mass. at 20 (citing Attorney General, Press Release, Updated Debt Regulations Provide Stronger Protections (Mar. 1, 2012), available at http://www.mass.gov/ago /news-and-updates/press-releases/2012/2012-03-01-debt-collection-regulations.html [https://perma.cc/F656-9NE3])).

M.G.L. ch. 93A, § 9(1) provides that any person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action in the superior court . . . whether by way of

original complaint, counterclaim, cross-claim or third party action, for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

Section 9(2) provides that such persons may bring claims as a class action. M.G.L. ch. 93A, § 9(2).

Section 9(3) provides that "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two . . . ." M.G.L. ch. 93A, § 9(3).

**This Litigation**

On April 8, 2019, Plaintiff filed his class action complaint in Middlesex Superior Court alleging Wells Fargo Auto had a practice and policy of placing more than two calls in a seven-day period to Plaintiff, and a class of similarly situated Massachusetts residents, in violation of 940 CMR § 7.04(1)(f).

On May 24, 2019, Wells Fargo Auto removed the case to the United States District Court for the District of Massachusetts. (Doc. No. 1).  On May 30, 2019, Plaintiff filed his amended complaint. (Doc. No. 8).

On June 12, 2019, Plaintiff filed a motion to remand to the Superior Court. (Doc. No. 13). Plaintiff argued that Wells Fargo Auto had failed to establish an amount in controversy sufficient to meet the requirements of removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  *Id*.  On June 21, 2019, Wells Fargo Auto moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 15). Defendant argued that Plaintiff failed to allege sufficient facts to state a claim for violation of ch. 93A and the Regulation in the first instance and failed to allege entitlement to damages. *Id*.

On August 14, 2019, the Court denied both motions (Doc. No. 27) and, following Defendant's answer, entered a pretrial schedule (Doc. No. 28 & 29).

Thereafter, in September 2019, the Parties exchanged written Rule 33 & 34 requests and Defendant noticed the Plaintiff's deposition. (Declaration of Sergei Lemberg ¶ 15). Following entry of a stipulated protective order (Doc. No. 30), Wells Fargo Auto produced hundreds of pages of documents related to Plaintiff's specific account, communications with the Plaintiff and dial histories, internal policy documents including documents related to compliance with the Regulation and policy changes made overtime, documents on record retention and policies for documenting the outcome of outbound calls. (Lemberg Decl. ¶ 15).

On February 17, 2020, the Parties advised the Court that they had agreed to participate in a private mediation on a class-wide basis and requested that the Court stay all then-pending deadlines for that purpose. (Doc. No. 32). The Court granted the motion on February 18, 2020. (Doc. No. 33).

On May 1, 2020, the Parties attended an all-day mediation session before the Honorable Stephen E. Neel (Ret.). (Lemberg Decl. ¶ 17; Declaration of Stephen Taylor ¶ 7). The Parties provided Judge Neel with detailed mediation briefs addressing all aspects of this case: claims in chief, defenses, class certification and the defenses or objections thereto, damages, and settlement. *Id*. The mediation was adversarial and conducted at arm's-length through Judge Neel. *Id*. The session resulted in an agreed set of terms to govern a class-wide settlement. *Id*.

Over the next several months, the Parties engaged in drafting, revising and agreeing to the Settlement Agreement. (Lemberg Decl. ¶ 18; Declaration of Stephen Taylor ¶ 8). Further, the Parties sought bids from potential settlement administrators before selecting JND Class Action Administration. *Id*. Wells Fargo also provided additional sworn testimony regarding the systems that it uses and the data that it maintains related to customer accounts to confirm how it compiled

the Class List.  Wells Fargo testified that based upon the available customer account data in its

systems of record, 20,757 unique accounts comprised the Class List. *Id.*

## TERMS OF THE SETTLEMENT

1. Class Definition

    The Settlement Class is:

    The individuals who were borrowers on a Wells Fargo Auto loan who may have
    received in excess of two telephone calls from Wells Fargo Auto in Massachusetts
    within a seven-day period to their residence, cellular telephone, or other telephone
    number regarding their automobile debt between April 26, 2015, and December 31,
    2019, as reflected on the Class List.

*See Settlement Agreement*, § 2.32.

    The "Class List" means the list produced by Wells Fargo Auto consisting of the names,

addresses and telephone numbers of the 20,757 Settlement Class Members. *Id.* § 2.3.

2. Benefits to Settlement Class Members

    Under the terms of the Settlement Agreement, each Settlement Class Member who does not

opt-out of the Settlement will be sent an equal share of the $1,025,000.00, non-reversionary

Settlement Fund, after deductions for administrative costs, any attorney's fee award and incentive

award to the Plaintiff.  *See Settlement Agreement*, § 3.1.3.  There is no claims process; Settlement

Class Members do not need to do anything to receive their Initial Settlement Check. *Id.*[2]

    Following the first distribution, if there are Remaining Funds from uncashed Initial

Settlement Checks, a Second Settlement Check consisting of a pro rata share of the Remaining

Funds will be sent to those members who *did* cash their Initial Settlement Check. *Settlement*

---

[2] Assuming Plaintiff requests and the Court approves a 1/3 Fee Award and a $7,500 Incentive
Award, dispersal will be as follows:

    Net Fund = $630,576.34 ($1,025,000 (Gross Fund) - $341,666.66 (Fee Award) –
                $60,257 (administrative costs) - $7,500 (Incentive Award)

Initial Settlement Check = $30.37 (Net Fund/20,757 (Settlement Class)

*Agreement*, § 3.1.6.  Provided, however, that if the face value of the Second Settlement Check is less than $5.00, the Settlement Administrator will not issue the Second Settlement Check and the Remaining Funds will instead go to a *cy pres* recipient approved by the Court at the final approval stage. *Id*. & § 3.1.9.

3.   Settlement Class Representative and Class Counsel; Attorneys' Fees and Incentive Award

The Settlement Agreement provides that Plaintiff may apply to the Court for an Incentive Award for his efforts on behalf of the Settlement Class, and Class Counsel may apply for an award of Attorneys' Fees and Costs from the Settlement Fund. *Settlement Agreement*, §18.

Class Counsel will apply for an Incentive Award of up to $7,500 for the Class Representative and of up to 1/3 of the Settlement Fund ($341,666.66) in Class Counsel fees and expenses. *Settlement Agreement*, §§ 18.1 & 18.2.  The Court will determine the final amount of the Fee Award and Incentive Award in this Action. *Id*.

The applications will be made thirty (30) days prior to the Objection Deadline. *Id.* The applications will be posted on the Settlement Website. *Settlement Agreement*, § 9.6.

4.   Notice

Written notice of the proposed settlement will be provided direct to Settlement Class Members via mail, sent no later than 30 days after the Court's entry of an order granting preliminary approval of the settlement. *Settlement Agreement*, § 9.3; *Settlement Agreement* Exhibit C (the Short Form/Postcard Notice).

Wells Fargo will provide the Settlement Administrator with the Class List consisting of the names, addresses and telephone numbers of the 20,757 Settlement Class Members. *Settlement Agreement*, § 3.1.2.  The Settlement Administrator will update all addresses using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("Postal Service"). *Id.* § 9.2.  The Settlement Administrator may conduct a reasonable search to locate an

updated address for any person whose Short Form/Postcard Notice is returned as undeliverable, it shall update addresses based on any forwarding information received from the Postal Service and it shall update addresses based on information received from persons in the Settlement Class. *Id.* § 9.3.

The Settlement Administrator will also maintain a Settlement Website with case information and documents (*Id.* § 9.6) and (2) a toll-free number to provide information to Settlement Class Members (*Id.* § 9.7).

Plaintiff requests that the Court approve JND Legal Administration ("JND") as the Settlement Administrator. JND has provided an estimate of $60,257 for class notice and administration costs. (Taylor Decl. ¶ 9).

Costs associated with notification under the Class Action Fairness Act will be paid separately by Wells Fargo Auto and will not be deducted from the Settlement Fund. *Settlement Agreement*, § 9.8; Taylor Decl. ¶ 10.

5.   Opt-Out and Objection Rights

Members of the Settlement Class can opt out of the class by sending a written request to exclude, an "Opt-Out", to the Settlement Administrator. *Settlement Agreement*, § 10. Any individual opt-out notices must be postmarked no later than 60 days after commencement of the Notice Plan. *Id.* § 2.20.

Also by that time, any Class Member who wishes to object to the Settlement Agreement must file with the Court a written notice of the objection, along with supporting papers setting forth the objector's grounds for objection. *Id.* §§ 2.19 & 12.

6.   Releases

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice as to himself and all Settlement Class Members. *Settlement Agreement*, § 17.1.

The Release is limited to the claims arising from the factual predicate of Harrington's and Settlement Class Member's underlying claims.  It provides that the Releasing Parties (Plaintiff, Settlement Class Members, others that could act on their behalf (*id*. § 17.4)) release the Released Parties (Wells Fargo Auto and related entities (*id*. § 17.2)), from all claims "based on facts alleged in the complaint filed in the Action that Wells Fargo Auto placed phone calls to the 20,757 Settlement Class Members in excess of two times in a seven day period regarding an automobile loan account between April 26, 2015 and December 30, 2019" (*id*. § 17.3).

7.  Proposed Deadlines

The Settlement Agreement provides that Class Counsel will file their brief in support of Final Approval of the Settlement Agreement 14 days before the Final Approval Hearing. *Settlement Agreement*, § 13.3.

The following table sets forth the important deadlines proposed in the Settlement Agreement and are also stated in the proposed Preliminary Approval Order:

| EVENT | SCHEDULED DATE |
|---|---|
| Notice mailing deadline (commencement of Notice Plan) | 30 days after entry of Preliminary Approval Order |
| Attorney's Fees and Costs application due by | 30 days following the Notice mailing deadline |
| Incentive Award application due by | 30 days following the Notice mailing deadline |
| Last day for Class Members to opt-out of Settlement | 60 days following the Notice mailing deadline |
| Last day for Class Members to Object to the Settlement | 60 days following the Notice mailing deadline |
| Briefs in support of Final Approval due by | 14 days prior to the Final Approval Hearing |
| Wells Fargo Auto to file certification regarding CAFA notice requirements | 14 days prior to the Final Approval Hearing |

| Final Approval Hearing | No earlier than 120 days after entry of the Preliminary Approval Order |
|---|---|

The Settlement Agreement represents the Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of the Settlement Class Members. Accordingly, the Settlement Agreement meets the threshold requirements for preliminary approval and the Settlement Class should be preliminary certified.

**POINT I**
**THE SETTLEMENT AGREEMENT**
**SHOULD BE PRELIMINARILY APPROVED**

**I.   STANDARD FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT**

To approve a class action settlement, a district court must find the settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2), *accord, Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). If the parties "negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009).

At the "preliminary approval" stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.632 (2004).   "'[W]hen the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected,' a presumption of fairness attaches to the court's determination" and preliminary approval is warranted. *In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

The recent revisions to Fed. R. Civ. P. 23(e) incorporate these requirements and set forth the procedures and standards for approval of a settlement and a notice plan.   In particular, Rule 23(e)(1)(B) sets forth that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."   Thus, the Parties must make a showing that the Court will be likely able to approve the settlement in toto when considering the factors of Rule 23(e)(2)[3] and that the settlement class is amenable to class certification under Rule 23.

Public policy favors the settlement of class actions. *See Hill v. State St. Corp.*, No. 09-12146, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015) (determination of whether settlement is fair, reasonable and adequate should be conducted "within the context of the public policy favoring settlement"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("[P]ublic policy generally favors settlement-particularly in class actions . . . ."). While public policy "encourages settlements, the burden remains on the proponents to show that the settlement is reasonable." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (internal citations omitted).   The final approval of any proposed class settlement ultimately requires the Court to balance "the advantages and disadvantages of the

---

[3] The Rule 23(e)(2) requirements for overall approval are a finding that the settlement is "fair, reasonable and adequate after considering whether: A) the class representatives and class counsel have adequately represented the class; B) the proposal was negotiated at arm's length; C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Id.* at 44.

## II.   THE SETTLEMENT AGREEMENT WARRANTS PRELIMINARY APPROVAL

The Settlement Agreement is an excellent result and merits both preliminary and, following notice and an opportunity to gauge the class reaction, final approval.

As an initial matter, a presumption of fairness to the settlement attaches where "sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11 :41, 92-93 (4th ed. 2002). Class Counsel has conducted more than sufficient investigation and discovery to enable them, and the Court, to act intelligently here.

First, Class Counsel represented the plaintiff in *Armata v. Target Corp.*, 480 Mass. 14 (2018) and is very familiar with what is needed to prove claims under Regulation 7.04(1)(f) and ch. 93A. Second, there has been sufficient investigation into the law and facts here for the presumption of fairness to arise. In addition to Class Counsel's own analysis, the legal contours of the claims and available damages were briefed and ruled upon with Plaintiff's motion to remand and Defendant's motion to dismiss. After the pleadings were joined, Plaintiff took and obtained discovery regarding Defendant's practices in regard to the Plaintiff himself, the Settlement Class, and Defendant's defenses. (Lemberg Decl. ¶ 15). In conjunction with settlement and before execution of the Settlement Agreement, Plaintiff demanded and Defendant provided additional sworn testimony on the class size and composition. (Lemberg Decl. ¶ 18). As a result of the foregoing knowledge, investigation and discovery, Class Counsel was well-positioned to evaluate the strengths and weaknesses of their case to negotiate class-wide relief and is able to recommend approval of the agreement to the Court. As a result of this investigation, a presumption of fairness attaches to the Settlement Agreement.

Consideration of the factors set forth in Rule 23(e)(2) also demonstrate approval is warranted.

### A. The Class has been more than adequately represented

The Settlement Class has been adequately represented by the Class Representative and by counsel.

"The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009). Further, the court must be satisfied that the interests of the class representative do not conflict with the interests of any of the class members, *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985), and that Plaintiffs' counsel are qualified and experienced and provided vigorous representation during the course of the case. *Id.*

First, Plaintiff is an adequate class representative. He has engaged in the case from the outset, communicating with his counsel regularly, answering discovery and in pursuing this matter as a class action. (Lemberg Decl. ¶ 22). There are no known conflicts between the representative and Settlement Class Members.

Second, Class Counsel has competently and vigorously represented the class. Class Counsel is very experienced in actions under the Regulation and Chapter 93A, having represented the plaintiff in the *Armata* matter before the Supreme Judicial Court of Massachusetts. 480 Mass. 14 (2018). Class Counsel has been certified as class counsel in myriad other matters in both settlement and litigation contexts. *See, e.g. Oberther v. Midland Credit Management*, 14-cv-30014 (D. Ma. Feb. 23, 2016) (approved as class counsel in Fair Debt Collection Practices Act class settlement); *Lavigne v. First Community Bancshares, Inc., et al.*, 2018 WL 2694457, at *5 (D.N.M. June 5, 2018) (approved as class counsel in Telephone Consumer Protection Act ("TCPA") action); *Munday v. Navy Federal Credit Union*, ECF No. 60, 15-cv-01629 (C.D. Cal., July 14, 2017)

(approved as class counsel in TCPA class action); *Brown v. Rita's Water Ice Franchise Co. LLC*, No. CV 15-3509, 2017 WL 1021025, at *1 (E.D. Pa. Mar. 16, 2017) (approved as class counsel in TCPA class action); *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577-MRH, 2016 WL 6916734 (W.D. Pa. July 14, 2016) (approved as class counsel in TCPA action); *In Re: Convergent Telephone Consumer Protection Act Litigation*, ECF No. 268, 3:13-md-02478 (D. Conn., November 10, 2016) (approved as class counsel in TCPA action); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (certifying auto fraud class action).

Further, Class Counsel has vigorously pursued the class claims here, from investigating Plaintiff's claims, drafting and filing a well-pled complaint, challenging Wells Fargo Auto's removal to this Court, defeating its motion to dismiss, taking discovery into merits and class issues, negotiating settlement terms and the settlement agreement to advocating for and overseeing the settlement process.

The result of Plaintiff's and Class Counsel's efforts is this excellent settlement.  Thus, the Court should find the adequacy of representation prong met.

### B.  The Settlement is the Result of Arm's Length Negotiations

Black''s Law Dictionary (10th ed.2014) defines "arm's length transaction" as follows:

1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.

The Settlement Agreement is the result of such arm's length negotiations.  Neither Plaintiff nor his counsel are affiliated with defendant Wells Fargo Auto.  While Wells Fargo Auto was an auto-loan lender in regards to the Plaintiff, that is not a "relation" which makes the negotiations any less arm's length.  Specifically, the relationship between Wells Fargo Auto and Plaintiff had no bearing at all on settlement negotiations where, as here, the negotiations were between adverse parties in the litigation.  That the negotiations were arm's length and not affected by any

relationship is also borne out by the results obtained for the class.   Thus, the Court should find that the proposal here was negotiated at arm's length.

### C.   The Relief Provided to the Class is Outstanding

Here, the Settlement Fund is $1,025,000.00 and there are a set number of 20,757 class members.  There is no claim process and members who do not opt-out will receive monies directly. That can be broken down several ways which all demonstrate the high value of the settlement. First, the entire fund equals approximately $49 per class member.   That's nearly double the minimum statutory award of $25.00 available under Chapter 93A.  Second, even when based on the net fund (gross fund excluding fees, costs etc.) the fund equals approximately $30 per class member, an amount still above the statutory award, if each and every class member cashes their Initial Settlement Check.  Third, assuming that less than 100% of class members cash the initial check, the actual recovery for class members will be higher through the second distribution.  Thus, if 50% of Settlement Class Members cash their initial check, each of those will receive an additional $30.  If 25% of Settlement Class Members cash their initial check, each of those will receive an additional $91.

This is an outstanding recovery for violations of chapter 93A and the Debt Collection Regulation.  As noted above, statutory damages under for chapter 93A violations are low where the Act provides that "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two . . . ." M.G.L. ch. 93A, § 9(3).  Further, actual damages in a case such as this for receipt of an excessive number of telephone calls is uncertain.

This settlement is in line with *Carlson v. Target Enterprises, Inc.*, 18-cv-40139 (D. Mass), another settlement of a Chapter 93A action based on alleged violations of the Regulation.  That

class settlement, where undersigned counsel represented the class, comprised of a fund of $2,275,000 and approximately 43,578 settlement class members.  (*Id*. Doc. No. 55 ¶ 3).  That equates to a total division of $52 per class members which is in accord with the $49 per member figure here. The Court approved the *Carlson* settlement as fair reasonable and adequate. *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1 (D. Mass. 2020).  Importantly, *Carlson* employed a claims process for members to recover and 12.5% of members recovered.  Here, members do not need to submit claims and payments will go directly to members.

Comparison to settlements under the Telephone Consumer Protection Act ("TCPA"), the federal statute that prohibits certain robocalls, is instructive.  Compared to Chapter 93A, damages under the TCPA are (i) certain and (ii) far higher where the TCPA has a mandatory penalty of $500 per each and every violation of the act. 47 U.S.C. § 227(c)(5)(B).  However, TCPA class settlements worth far less than the settlement here are frequently approved as fair, reasonable, and adequate. *See, e.g.*, *Hopkins v. Modernize, Inc.*, Doc. No. 101 & 108, 17-cv-40087(TSH) (D. Mass) (final approval granted of TCPA class settlement with per claimant recovery of $26 with a participation rate of only 3%); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (per claimant recovery of $34.60 with a participation rate of 7.8%); *In Gehrich v. Chase Bank USA, N.A.*, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) (per claimant recovery of $52.50 with participation rate of 1.08%); *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, 2016 WL 54678, (D. Or. Jan. 5, 2016) (per claimant recovery of $140.86 with participation rate of .08%); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ($20.00 to $40.00 per class member with 3% claims rate).  In comparison, the claims here are worth far less per member but the settlement here is far *higher* per member.  This is an excellent result meriting approval.

**D.  The additional factors identified in Rule 23(e)(2)(C) all favor approval**

(i) the costs, risks and delay of trial and appeal support approval.

"[A] significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005).   Although Plaintiff believes his arguments in support of liability to be strong, Defendant disputed his claims and believed it would prevail at summary judgment or on a motion for class certification.   Although Plaintiff believes that the claims are meritorious and would prove successful, he recognizes that ultimate success on the merits is by no means assured.   Further, Wells Fargo Auto was and is represented by very able counsel who have demonstrated Wells Fargo Auto's ability to put forth a vigorous defense.

Further, there is risk in establishing damages.   Damages for violations of Chapter 93A are twenty-five dollars or actual damages, whichever is greater, with the prospect of trebling the same for willful or knowing violations. M.G.L. ch. 93A, § 9(3).   Whether Plaintiff could recover the $25 statutory penalty for each separate violation of the Debt Collection Regulation (*i.e.* for each instance Wells Fargo Auto called in excess of two times in a seven day period), as opposed to $25 dollars per action, is an issue.   No Court has firmly held either way in the context of the Debt Collection Regulation.   However, Courts addressing other claims under chapter 93A demonstrate the hurdles Plaintiff could face here.   *See Aspinall v. Philip Morris Companies, Inc.*, 2013 WL 7863290, at *8-10 (Mass. Super. Feb. 7, 2013).   Further, establishing actual damages on a class or individual basis posses risks both on the merits (how much would this Court or a jury award for actual damages for receipt of too many telephone calls?) and to certification.

Additionally, Plaintiff faced risks on class certification.   Although this Court may certify a class for settlement purposes, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) ("Confronted with

a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*). Thus, there is no guarantee that a class could be certified for litigation purposes in this case.

(ii) the effectiveness of any proposed method of distributing relief to the class merits approval.

The method of distributing relief here is straightforward, equitable and fair. All members will be sent an initial check. Those that cash it will be sent a second check of residual funds if the value will be more than $5. There is no claims process or anything else members need do to receive benefit.

(iii) the terms of any proposed award of attorneys' fees, including timing of payment, support approval of the settlement.

Class Counsel will seek up to 1/3 of the fund in attorneys' fees and costs. A third of a common fund in fees and costs is presumptively reasonable. *See Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (approving 1/3 of the fund with lodestar cross-check); *Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) ("the one-third fee requested here is fair and reasonable"); *see also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) (awarding 30% of common fund and observing that "as several courts have concluded, 30% is not out of proportion with recovery percentages in large class action litigations."). Class Counsel notes that the Court in *Carlson v. Target* awarded fees and costs of 23% of that settlement fund. *Carlson*, 447 F. Supp. 3d 1 (D. Mass. 2020). Here, however, the class and total fund are smaller and a one-third fee of this fund will more adequately compensate class counsel. Further, while the terms of the proposed award of fee is "up to" 1/3, Class Counsel may seek less when filing the application. The provision of up to 1/3 of a

common fund settlement in fees and expenses, regardless of the amount eventually sought and awarded, is reasonable and poses no bar to approval.

(iv) and regarding the fourth sub-factor, the only agreement required to be identified under Rule 23(e)(3) is the Settlement Agreement Plaintiff submits to the Court.  There are no other agreements at issue.

Considering all these factors, the relief provided to the class is more than adequate and merits approval.

### E.  The Proposed Settlement Treats Members of the Class Equally

The final Rule 23(e)(2) consideration also supports approval where the proposed settlement treats all members the same.  Each class member is entitled to equal share from the Settlement Fund.  No group is treated differently.  Further, each class member may object or opt out in the same fashion.  Because there is no disparate treatment between members, the settlement merits approval.

For the foregoing reasons, the Parties' Settlement Agreement merits approval.

**POINT II**
**THE SETTLEMENT CLASS SHOULD BE CERTIFIED**

### I.  LEGAL STANDARD FOR CONDITIONAL CERTIFICATION OF CLASS ACTION FOR SETTLEMENT PURPOSES

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Amchem").  Hence, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) *(*citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  In doing so, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Waste Mgt. Holdings, Inc. v. Mowbray*, 208

18

F.3d 288, 298 (1st Cir. 2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). "When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *Amchem*, 521 U.S. at 620). "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)).

The Settlement Class here is defined as:

> The individuals who were borrowers on a Wells Fargo Auto loan who may have received in excess of two telephone calls from Wells Fargo Auto in Massachusetts within a seven-day period to their residence, cellular telephone, or other telephone number regarding their automobile debt between April 26, 2015, and December 31, 2019, as reflected on the Class List.

*See Settlement Agreement*, § 2.32. The "Class List" means the list produced by Wells Fargo Auto consisting of the names, addresses and telephone numbers of the 20,757 Settlement Class Members. *Id*. § 2.3.

### A.  Rule 23(a)'s Requirements Are Satisfied

#### 1.  Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 258 (D. Mass. 2005).  The standard of impracticability does not mean "impossibility" but only difficulty or inconvenience of joining all members of the class. *Novella v. Westchester Cnty.*, 661 F.3d 128, 143 (2d Cir. 2011). While there is no specific threshold for numerosity, "a class size of forty or more will generally suffice in the First Circuit." *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014)

The Settlement Class numbers 20,757, joinder of their claims would be impracticable and the numerosity standard is met.  *See, e.g., Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (proposed class consisting of 800 to 900 members made joinder impracticable).

### 2. Commonality

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2).  Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011). Commonality exists "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).

Here, common issues of fact and law include: (1) whether Wells Fargo Auto's practice of calling Massachusetts consumers more than twice within a seven-day period regarding a debt violated Regulation 7.04(1)(f) and ch. 93A and (2) whether Wells Fargo Auto acted intentionally in so violating the Regulation.  Determination of these issues alone, regardless of the answers, will resolve or significantly impact the allegations for the whole Class "in one stroke." *Dukes*, 131 S. Ct. at 2545. As such, the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The requirement is satisfied if the "class representative[s] . . . 'possess the same interest and suffer the same injury' as the class members." *East Tx. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). Typicality is present when the class representative's claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *García– Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)) (alterations in original). The typicality inquiry allows the court

to "'align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)).

Plaintiff proceeds with the same legal theory as the Settlement Class.  He, like absent members, were called in excess of two times in a seven day period to collect a debt. He, like absent members, claims this conduct violated Regulation 7.04(1)(f) and ch. 93A.  Because Plaintiff's claims are identical to those of all class members, typicality is satisfied.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiff will act diligently on behalf of the class. *Amchem*, 521 U.S. at 625; *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63-64 (D. Mass. 1997). The First Circuit employs a two-part test in analyzing adequacy: (1) the class representative's interests must not conflict with the interests of the class; and (2) class counsel is experienced, qualified and able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d at 282.

Both requirements are met. First, Plaintiff's counsel are experienced class action lawyers whose combined experience in consumer protection and complex class action litigation, and current diligence and commitment to this litigation, will more than adequately protect the interests of the Settlement Class. (Lemberg Decl. ¶¶ 4-5); *see generally Lavigne v. First Community Bancshares, Inc., et al.*, 2018 WL 2694457, at *5 (D.N.M. June 5, 2018) (approved as class counsel in TCPA action); *Munday v. Navy Federal Credit Union*, ECF No. 60, 15-cv-01629 (C.D. Cal., July 14, 2017) (approved as class counsel in TCPA class action); *Brown v. Rita's Water Ice Franchise Co.*

*LLC*, No. CV 15-3509, 2017 WL 1021025, at *1 (E.D. Pa. Mar. 16, 2017) (approved as class counsel in TCPA class action); *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577-MRH, 2016 WL 6916734 (W.D. Pa. July 14, 2016) (approved as class counsel in TCPA action); *In Re: Convergent Telephone Consumer Protection Act Litigation*, ECF No. 268, 3:13-md-02478 (D. Conn., November 10, 2016) (approved as class counsel in TCPA action); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (certifying auto fraud class action).

Second, there is no conflict or antagonism between the proposed Class Representative and the Settlement Class Members. As shown through commonality and typicality, Plaintiff's claims are identical to those of the rest of the Class members.

### B. Rule 23(b)(3)'s Requirements Are Satisfied

The proposed Settlement Class should be certified pursuant to Rule 23(b)(3), which requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011). Further, "a district court must formulate

some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).

Here, the central issue in this case is whether or not Wells Fargo Auto had a policy and practice of calling consumers in excess of two times in a seven day period regarding consumer debt. That issue predominates Plaintiff's and absent class members' claims under Regulation 7.04(1)(f) and ch. 93A.

### 2. Superiority

A class action is the superior method of resolution if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are considered in determining whether a class action is superior to individual litigation: (1) whether individuals have a strong interest in controlling potentially separate actions; (2) a class action's effect on competing litigation involving members of the class; (3) whether resolution of the case in a single forum is desirable; and (4) the potential difficulties that management of a class action presents. Fed. R. Civ. P. 23(b)(3).

The superiority considerations weigh in favor of certification. "Certification allows the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). It is neither economically feasible, nor judicially efficient, for the tens of thousands of Settlement Class Members to pursue their claims against Wells Fargo Auto on an individual basis. *See Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) certification is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."); *Grace v. Perception Tech., Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988). Finally, the difficulties

of managing a class action are vitiated by the fact of this Agreement. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

**POINT III**
**THE PROPOSED NOTICE TO CLASS MEMBERS MERITS APPROVAL**

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is finally approved by the Court. MANUAL FOR COMPLEX LITIGATION THIRD (1995) §30.212. The Settlement Agreement proposes notice of the Settlement be provided by direct mail to all class members from their addresses (1) as contained within Wells Fargo Auto's customer records and (2) as updated by the Settlement Administrator. The Settlement Administrator is to handle the mailing of notices in accordance with its regular procedures for updating addresses including through the National Change of Address database maintained by the United States Postal Service.

Under Rule 23(e) and Constitutional notions of due process, adequate notice must be given to all potential class members to enable them to make an intelligent choice as to whether to opt-out of the class. The Supreme Court has held that Rule 23 and due process do not require delivery of actual notice to every class member. Rather, "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). In addition, it is well-settled that in the usual situation, first class mail of the notice and claim form to each class member satisfies Rule 23's notice requirements. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances").

24

In this case, the post-card notice attached as Exhibit C to the Settlement Agreement describes this case, Class Member's rights to recover, to opt-out or to object.  Further, the Long Form Notice, attached as Exhibit A to the Settlement Agreement, which supplies additional information on the same matters will be posted on the settlement website.

## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order:

1. Preliminarily approving the terms of the Parties' Settlement Agreement;

2. Conditionally certifying the Settlement Class for the purpose of settlement;

3. Appointing Plaintiff as Settlement Class Representative;

4. Appointing Lemberg Law as Class Counsel;

5. Approving the form, content and method of delivering Notice to the Settlement Class set forth in the Parties' Settlement Agreement and in the exhibits thereto; and

6. Scheduling a Final Approval hearing in accordance with the deadlines provided in the Settlement Agreement.

Dated: September 3, 2020                                      Respectfully submitted,


                                                             By:  ___/s/ Sergei Lemberg_____
                                                             Sergei Lemberg, Esq. (BBO# 650671)
                                                             LEMBERG LAW, LLC
                                                             43 Danbury Road
                                                             Wilton, CT 06897
                                                             Telephone: (203) 653-2250
                                                             Facsimile:  (203) 653-3424
                                                             Attorneys for Plaintiff

25

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2020, I served a true and accurate copy of the foregoing to counsel of record through the Court's CM/ECF system which sent notice of such filing to all counsel of record.

 /s/ Sergei Lemberg
Sergei Lemberg